Charles W. Coe ABA#7804002
Law Office of Charles W. Coe
810 W 2nd Avenue
Anchorage, Alaska 99507
Telephone:  907-276-6173
Facsimile:  907-279-1884
Email:  charlielaw@gci.net

Attorney for R.R.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| R.R., <br><br>                 Plaintiff, <br><br> v. <br><br> RAY J. GARCIA, <br><br>                 Defendant. | Case No. 3:23-cv-_____ <br><br> **COMPLAINT FOR DAMAGES** <br><br> ***BIVENS* CLAIM-VIOLATION OF CONSTITUTIONAL RIGHTS UNDER FOURTH FIFTH EIGHTH AND FOURTEENTH AMENDMENTS** <br><br> **JURY TRIAL DEMANDED** |

**INTRODUCITON**

    1.    This is a civil action brought under the United States Constitution

pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*

403 U.S. 388 (1971) ("Bivens") concerning sexual abuse and violation of the

rights of a prison inmate, R.R., at the Federal Correctional Institute/Federal

Correctional Camp in Dublin, California.

2.    Plaintiff, R.R., who is going by her initials in this action for privacy and safety purposes, asserts this claim based on the outrageous sexual abuse, sexual statements, and sexual contact she endured by Federal Bureau of Prisons officer, Ray J. Garcia, at the Bureau of Prison's ("BOP's") all female federal prison camp at Dublin, California ("FPC Dublin").  The Dublin, California Federal Corrections Institute ("FCI-Dublin") is a low security federal correctional institution with an adjacent minimum security satellite camp for female offenders. The defendant made sexual statements and started a grooming process in 2019, which continued into 2020.  The physical, verbal, and contact abuse occurred during July and August 2020 at Dublin and continued after September 23, 2020, when plaintiff was in a half-way house in Anchorage, Alaska.  Plaintiff is a resident of Alaska.  Plaintiff filed an Administrative Claim under the Federal Tort Claims Act against the Federal Bureau of Prisons, which is pending adjudication at this time.

3.    During all times relevant to this complaint, Warden Ray J. Garcia, and other BOP employees fostered a culture of rampant sexual abuse of prisoners widely referred to as "the rape club".  The culture, custom and policies of rape, sexual abuse, sexual contact, and sexual harassment at FCI-Dublin and FCP Dublin, were enabled by the highest levels of staff, including but not limited to Warden Ray Garcia, who not only condoned it, but participated in it including the

conduct, which occurred at FPC Dublin in 2019 through September 2020 and continued at the half-way house in Anchorage ,Alaska with R.R., when she was a prisoner within the federal system.

**Jurisdiction and Venue**

4.     This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1343 (civil rights jurisdiction).

5.     Venue is appropriate in this court under 28 U.S.C. §1391(b)(2) as the events or omissions giving rise to the claim occurred at the Federal Correctional Institute at Dublin, California, which is located in Alameda County, within the Northern District of California and continued via phone, text, and email while the defendant was employed the Bureau of Prisons in October 2020, even though the plaintiff was in a half-way house in Alaska after September 23, 2020. Defendant used personal and government provided phones and computers to accomplish sexual exploitation of the plaintiff.

**Parties**

6.     Plaintiff, R.R., ("Plaintiff") was an inmate at the Bureau of Prison's all female Federal Prison Camp in Dublin, California.  R.R. is no longer incarcerated and no longer under probation in the federal system.

7.    Plaintiff was released from the halfway-house on January 16, 2021, in Alaska.  In November 2016 she was convicted in Alaska and sent to FCI-Dublin to serve her sentence, since Alaska has no BPO prison for female inmates.  She was sent to FCI-Dublin in December 2016.  She remained at FCI-Dublin until September 23, 2020, when she was transferred to a half-way house in Anchorage to complete her sentence.  At all times she was subject to the supervision and rules of the Federal Bureau of Prisons, which included supervision and control by the defendant, Ray J. Garcia.

8.    Defendant, Ray J. Garcia ("Garcia" or "Defendant Garcia") was at all times relevant to the complaint, employed by the BOP as first the Associated Warden in charge of operating the Federal Correctional Institute ("FCI") of Dublin and the adjacent prison camp ("FPC Dublin").  He also administered the Prison Rape Elimination Act ("PREA") program, designed to eliminate the sexual abuse and harassment of inmates in federal prison including FCI-Dublin.  He then became Warden of FCI-Dublin and FPC Dublin where sexual abuse and sexual contact with the plaintiff occurred.  As the Associate Warden and Warden of FCI-Dublin, defendant, Garcia, was in charge of ensuring female inmates were not abused by male guards and was specifically in charge of his staff training and discipline to prevent sexual abuse, sexual contact, sexual harassment, and violation of R.R.'s constitutional rights  He is personally liable and responsible for

the abuse of female inmates including R.R., which he continued to do when she was in the half-way house. As Warden at the BOP facility, Garcia was in a position of power with respect to all female inmates including R.R., where specifically sexually abused her, had sexual contact with her, kissed her, violated her constitutional rights, made derogatory sexual comments to her, took sexually related photographs of her using BOP devices, and intimidated her into performing sexual acts and producing photographs of her. Defendant was charged with committing sexual abuse of a prisoner while under his supervision and convicted in December, 2020. He was sentenced by the federal court in 2023 at which time he admitted to the sexual abuse committed against R.R., and other female inmates under his control. He was sentenced to 70 months of incarceration and waived his rights to appeal.

9.    Plaintiff brings this complaint under *Bivens, supra* since defendant's conduct acts and omissions meet the requirements of *Bivens* including the violation of the Fourth, Fifth, Eighth, and/or Fourteenth Amendments to the United States Constitution. These include her rights to due process, equal protection rights, violations of her rights against illegal search and seizure, abuse, threats of her rights to due process, rights against cruel and unusual punishment, and violation of her rights to privacy.

**Facts**

10.    As recognized by federal law, there is no scenario in which an inmate can give consent to sexual contact with a correctional officer, such as the defendant.  In 2003, Congress unanimously enacted the Prison Rape Elimination Act (PREA) and declared "the prevention of prison rape a top priority in each prison system".  34 U.S.C. §3031(2).  Despite the BOP's responsibility to enforce a "zero-tolerance standard for the incidence of prison rape in prisons in the United States" 34 U.S.C. §3031(1), the culture of sexual abuse at FCI and FCP Dublin was so pervasive that the facility has been referred to as the "rape club."  BOP, FCI-Dublin, and FCP Dublin failed to implement necessary and feasible protections for prisoners, including a viable mechanism for reporting sexual abuse, continuous direct sight and sound supervision, and appropriate training, supervision, and discipline of the employees, as well as administrators such as Garcia.  These Dublin officers such as the defendant, who were responsible for preventing and remedying sexual abuse were in fact serial sexual predators and abusers.

11.    Defendant, Ray Garcia, was in charge of FCI-Dublin and FCP Dublin first as Associate Warden with the responsibility of administering the PREA program, and then as Warden of FCI-Dublin and FCP Dublin during the time plaintiff was serving her sentence at FCI-Dublin and FCP Dublin.

Defendant, Garcia, and other BOP officers were members of the FCI-Dublin and FCP Dublin "rape club", which is what the BOP officers who sexually assaulted and sexually harassed the female inmates at Dublin were called.  Garcia himself and the Dublin leadership tolerated and encouraged sexual harassment and sexual abuse by permitting predatory employees to harass, rape, and abuse inmates without consequence.  Although the first complaints of sexual abuse surfaced in 2017, Garcia and the leadership of FCI-Dublin and FCP Dublin permitted abuse conditions to continue, thereby creatin customs and practices of sexual harassment, abuse, and rape by prison officials that included those at the highest levels of command, such as Garcia.  It did not matter what the written policies were because embedded in FCI-Dublin and FCP Dublin were these sexual abuse and sexual harassment practices that became the accepted conduct and norm within the prison.  Prisoners who reported sexual abuse were ignored, threatened, or retaliated against with solitary confinement or loss of favorable job assignments.  Prison officials expressly advised one victim that they would take no action in response to her report because it was a "he-said-she-said" scenario.  The policy, custom and practices that directly violated PREA and were implemented by Garcia where he knew other guards were sexually abusing inmates gave implicit permission to officers such as Garcia to abuse and harass female inmates including the plaintiff.  Garcia's involvement in the "rape club" and his personal

knowledge and approval of the BOP officers' sexual abuse of female inmates, and his role as supervisor and sexual abuser of R.R., gives rise to this complaint against him and the causes of action set out hereafter.

12.     Plaintiff, R.R., a resident of Alaska, was originally designated to serve her sentence at FPC Dublin and began service of her sentence there in December 2016.  Plaintiff served her time at Dublin until September 23, 2020, when she was transferred to a half-way house in Alaska.  The sexual abuse and harassment by Garcia continued after she entered the half-way house.  It started with a grooming process involving sexually derogatory communications in 2019 and continued into 2020 when defendant had sexual abuse and contact with her.  It also continued into October 2020 when the defendant would contact plaintiff via phone and take photographs of her unclothed without her permission.

13.     In the summer of 2019, the defendant began showing an interest in R.R., and approached her at various times to make sexually derogatory comments. In July, August, and September at various times he sexually abused her, kissed her, and had sexual contact with her on multiple occasions.  This abuse included grabbing/fondling her breasts and buttocks as well as specifically placing his penis against her vagina.  Defendant, during this time while at the FCI facility, escalated his sexual contact behavior until she was transferred to a half-way house at the end of September 2020.

14.    While at the half-way house, defendant continued to contact the plaintiff via phone and had her participate in face time in which he had her take off her clothes and expose her body.  Defendant would also expose his genitals to R.R., in these calls.

15.    Defendant, unbeknownst to the plaintiff, seized sexually based images of her while she undressed and kept them on his phone or computer for his and others to use without her knowledge or permission.

16.    Defendant abused his authority and threatened to have plaintiff's probation and/or time at the half-way house revoked, if she did not participate in his sexual harassment and abusive activities, which he knew was inappropriate.

17.    According to the FBI and the law enforcement investigation defendant has in excess of 90 or more screen shots/photographs of the plaintiff naked or disrobed.  She was unaware that they were taken in September or October of 2020 and kept in Garcia's possession for his own gratification.

18.    All of these encounters were offensive and unwelcome.  R.R. was very uncomfortable with the coercive dynamic between them and had little choice to stop due to her incarceration status.  Despite her significant discomfort, she felt powerless to report him.  R.R. was aware that Garcia had disciplinary control over her, as well as access to highly confidential information in her prisoner file. Garcia knew she lived in Alaska, that she has a developmentally disabled child,

and knew that she was emotionally vulnerable, due to her past abuse and due to her fear of having her probation revoked.  When this abuse occurred, she had almost completed her sentence.  She was concerned that she would lose her good time credits, face disciplinary retaliation for accusing him of harassment and sexual abuse.  In fact, even though he was eventually criminally indicted for his acts against her, her family continued to receive inappropriate emails about her into 2022.

19.    R.R. was also deterred from reporting by the sexually abusive and harassing culture at FCI-Dublin and FPC Dublin, where the defendant, Garcia, ran the rape reporting program and where Dublin leadership tolerated and encouraged sexual harassment and sexual abuse by permitting predatory employees to harass, rape, and abuse inmates without consequence.  At the time of these events, the facility was supervised by defendant Garcia who implemented an unwritten policy, custom and practice of sexually harassing, abusing, and even raping female inmates.  Indeed, to this date, there have been several BOP officials and employees who have been charged by the U.S. Department of Justice for their inappropriate conduct at Dublin, including Warden Garcia who was convicted of sexual acts involving R.R.  Garcia is directly responsible for the sexual abuse, sexual harassment, and violation of rights of the plaintiff.

20.    Defendant Garcia was charged by the U.S. Department of Justice with having sexual encounters with female inmates including R.R. at FCI-Dublin and was convicted of such incidents in December 2022.  He was sentenced to 70 months incarceration.  At the sentencing hearing he admitted to the allegations of sexual assault and harassment against R.R., as set out in this complaint.

21.    It is illegal and a crime for any prison staff to have consensual or non-consensual sexual contact with any prisoner.  Garcia was well aware of the law, and despite his knowledge he was enabled by the "rape club" and the customs and policies of FCI-Dublin and FCP Dublin.  He chose to engage in illegal sexual contact of R.R.  He also searched and illegally seized her property by taking photographs of her undressed without her permission.

22.    In 2003, Congress enacted the Prison Rape Elimination Act (PREA) and declared "the prevention of prison rape a top priority in each prison system," 34 U.S.C. §3031(2).  Despite the BOP's responsibility to enforce a "zero-tolerance standard for the incidence of prison rape in prisons in the United States" 34 U.S.C. §3031(1), the culture of sexual abuse at FCI-Dublin and FCP Dublin was so pervasive that the facility has been referred to as the "rape club."  BOP and FCI-Dublin and FCP Dublin failed to implement necessary and feasible protections for prisoners as required by PREA, which was supervised by Garcia, including a viable mechanism for reporting sexual abuse, continuous direct sight and sound

supervision, and appropriate training, supervision, and discipline, and specifically, not enacting an unwritten policy, custom and practice or rampant sexual abuse and harassment by guards and their supervisor with the power and obligation to prevent it.  The very officers, including defendant Garcia who were responsible for preventing and remedying sexual abuse, were themselves serial sexual predators.

23.     Plaintiff R.R. submitted an Administrative Federal Tort Claim to the Federal Bureau of Prisons on or about August 19, 2022, which was amended on December 15, 2022, adding more to the sum certain.  R.R. will amend this complaint to add claims under the Federal Tort Claims Act when this claim becomes ripe.

**Damages**

24.     Plaintiff was physically, mentally, and emotionally injured as a direct and proximate result of defendant's actions and entitled to non-economic damages.

25.     Plaintiff is entitled to recover damages pursuant to the pain and suffering and mental and physical trauma she endured as a result of her rights being violated, her body being violated, and being harassed.  She is also entitled to medical care, costs, lost income, impairment of her body, mental health.

26.     Under *Bivens, supra* plaintiff is entitled to punitive and exemplary damages.

R.R. V. GARCIA
CASE NO. _____
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**Claims of Relief**

       **First Claim for Relief:** *Bivens* **Cause of Action for**
       **Violation of the Eighth Amendment**

       27.     Plaintiff realleges all foregoing and subsequent paragraphs as if fully set forth therein this cause of action.

       28.     At all relevant times, the defendant, Garcia, was acting under the color of federal authority.

       29.     Under the Eighth Amendment of the United States Constitution, plaintiff has a constitutionally protected right to be free of cruel and unusual punishment.  Sexual abuse of a prisoner is a violation of the Eighth Amendment of the Constitution.

       30.     As recognized by federal law, there is no scenario in which an inmate can give consent to sexual contact, harassment, and abuse by a correctional officer.  R.R. did not consent to any of the sexual contact initiated by defendant Garcia, all of which was unwelcome.

       31.     Garcia knew his conduct was prohibited.  He knew it was prohibited by his PREA training, but it was also condoned by FPC Dublin's "rape club" and unwritten custom and practice of sexual harassment and abuse.  R.R. informed and believed that Garcia was advised, as part of his leadership role and training, that he could not maintain inappropriate relationships with prisoners, which included

becoming emotionally, sexually, romantically, or financially involved with prisoners or former prisoners.

32.    Plaintiff has no remedy against defendant Garcia other than to file this action for damages in which her rights under the 8th Amendment of the United States Constitution has been violated.

**Second Claim for Relief: *Bivens* Cause of Action for
Violation of Illegal Search and Seizure, Plaintiff's Rights
Under the Fourth Amendment Involving Search and Seizure**

33.    Plaintiff realleges all foregoing and subsequent paragraphs as if fully set forth therein in this cause of action under the Fourth Amendment of the United States Constitution.

34.    Defendant violated plaintiff rights under the Fourth Amendment of the United States Constitution by conducting acts of unlawful search and seizure against the plaintiff.

35.    While plaintiff was under the control either direct implied, defendant under color of authority, reviewed and obtained information from plaintiff's prison files to engage in conduct meant to sexually abuse or harass the plaintiff, as well as have her participate in sexual conduct with the defendant.

36.    While under defendant's control either direct or implied, defendant also obtained, seized, and kept photographs and images of the plaintiff in various stages of

R.R. V. GARCIA
CASE NO. _____
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

being undressed without her permission for his own personal gratification and/or for distribution to other individuals.

37.     Plaintiff has no remedy against defendant Garcia other than to file this action for damages in which her rights under the Fourth Amendment of the United States Constitution has been violated.

**Third Claim for Relief: Violation of the Plaintiff's Rights To Due Process and Equal Protection Under the Fifth and 14th Amendment**

38.     Plaintiff realleges all the foregoing paragraphs to fully set forth her claims for violation of plaintiff's rights under the Fifth and 14th Amendment of the United States Constitution.

39.     Defendant committed acts to interfere with plaintiff's rights of due process and equal protection under the Fifth and/or Fourteenth Amendments of the United States Constitution by taking, seizing, keeping personal and intimate photographs of her without her permission, by obtaining information from her personal prison file without permission, and by threatening to have her probation and half-way house time revoked or reduced if she did not continue to subject herself to his acts of sexual abuse and sexual harassment including acts that occurred in the past and which he intended to continue into the future.

40.    Plaintiff lacks a statutory cause of action, or the available statutory causes of action do not provide a meaningful remedy, and an appropriate remedy, namely damages, can be imposed against defendant Garcia.

41.    The actions, conduct, and omissions of defendant Garcia violated the rights of the plaintiff's rights and protections under the Fourth, Fifth, Eighth and/or 14th Amendments to the United States Constitution such that she should be awarded relief and damages.

**Relief Requested**

WHEREFORE, plaintiff respectfully requests and prays for judgment against the defendant as follows:

A.  Compensatory damages as to defendant Garcia to be set at trial;

B.  Punitive and exemplary damages as to defendant Garcia to be set at trial;

C.  Reasonable attorney fees and costs; and

D.  Such other and further relief as may appear just and appropriate.

**Jury Demand**

      Plaintiff hereby demands a jury trial.

      DATED this 29th day of June 2023.

                             By: /s/Charles W. Coe
                             Counsel for Plaintiffs
                             810 W 2nd Avenue
                             Anchorage, Alaska 99501
                             Phone: (907) 276-6173
                             charlielaw@gci.net
                             ABA#7804002